Filed 6/18/14; pub. order 7/3/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RAJ SINGH et al., | |
| Plaintiffs and Appellants, | C073177 |
| v. | (Super. Ct. No. 34200900066746CUFRGDS) |
| STEPHEN LIPWORTH, | |
| Defendant and Respondent. | |

A judgment entered against Raj Singh in a prior action (Super. Ct. Sacramento County, 2006, No. 00AS00602) was assigned to Stephen Lipworth, who moved successfully to amend the judgment to add certain aliases of Singh, namely Kaus Singh and Archana Singh. (*Singh v. Lipworth* (June 18, 2008, C053762) [nonpub. opn.].)[1] Thereafter, the trial court granted Lipworth's application for sale of certain property, which Singh had transferred to his wife, Karen Singh, who in turn transferred the

---

[1]    Lipworth requests that we take judicial notice of this unpublished opinion and a printout from the California Courts Website listing the various appeals Singh has filed with this court over the years. We do so. (Evid. Code, § 452, subd. (d)(1).) We take many of the facts of the prior lawsuit from that unpublished decision.

1

property to Suman Mehta.  The trial court concluded, "Mehta is yet another alias adopted by [Singh] in his 'identity shell game,' " set aside the fraudulent transfers, and ordered the property sold to enforce the judgment.  The order granting Lipworth's application for sale (sale order) became final after various appeals therefrom were dismissed.

In the present case, Singh, along with his wife Karen and alias Mehta, sued Lipworth alleging he used "fraudulent representations" to persuade the trial court in the prior case that Singh was "hiding some properties from his creditors using different names such as Archana Singh and Suman Mehta."  After several frivolous motions were decided against Singh, the trial court invited Lipworth to file a motion to require Singh to furnish security or have the case dismissed pursuant to the vexatious litigant statutes. (Code Civ. Proc., § 391 et seq.)[2]  Lipworth did so.  The same day, Lipworth filed both a demurrer and a special motion to strike pursuant to the anti-SLAPP statute.[3]  (§ 425.16.) The trial court found Singh to be a vexatious litigant with no reasonable probability of prevailing in the litigation because the lawsuit amounted to an impermissible collateral attack on a prior final judgment and post-judgment orders.  The trial court ordered "Raj Singh aka Suman Mehta" to furnish security in the amount of $15,000 and dismissed the lawsuit as to these plaintiffs when no such security was furnished.  The trial court then granted the anti-SLAPP motion as to the remaining plaintiff, Karen Singh, and awarded $1,165 in attorney fees and costs.

Plaintiffs appeal.  Their opening brief, filed by attorney Keith R. Oliver, is a rambling and disjointed series of accusations, much of which was lifted word for word from pleadings filed by Singh in the trial court, and none of which can be considered "meaningful legal analysis supported by citations to authority and citations to facts in the

---

[2]    Undesignated statutory references are to the Code of Civil Procedure.

[3]    SLAPP is an acronym for "strategic lawsuit against public participation."

record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Indeed, the argument section of the brief contains no citations to the record at all. And the section purporting to provide "a summary of the significant facts" (Cal. Rules of Court, rule 8.204(a)(2)(C)), instead contains a paragraph of accusations without citation to the record followed by three small paragraphs setting forth the procedural history in minimalist fashion.[4] We consider all points asserted in this appeal to be forfeited as unsupported by "adequate factual or legal analysis." (*Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 814; *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457-1458; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078 ["suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review"].)

This would be the end of the matter, except Lipworth has filed a motion for sanctions against plaintiffs and attorney Oliver pursuant to section 907 and rule 8.276 for bringing a frivolous appeal. As we explain, this appeal "indisputably has no merit" and "any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*).) While "sanctions should be used sparingly to deter only the most egregious conduct" (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 557 (*Kleveland*)), we conclude they are warranted in this case. We therefore affirm the judgment and impose sanctions against plaintiffs and attorney Oliver in the amount of $7,478.75 payable to Lipworth, as well as $7,500 payable to the clerk of this court.

---

[4] Undesignated rule references are to the California Rules of Court.

3

BACKGROUND

### *The Prior Lawsuit*

U-Save Auto Rental of America, Inc. (U-Save) won an arbitration award against Singh. U-Save filed a petition in the trial court to confirm the award; Singh sued to set it aside, but failed. In February 2005, the trial court awarded U-Save a judgment of $127,690.25 plus interest. (*Singh v. Lipworth, supra,* C053762.)

The judgment was assigned to Lipworth. The assignment listed Singh's last known address as: "1625 28th Street, Sacramento, California, 95816." (*Singh v. Lipworth, supra,* C053762.) Lipworth moved to amend the judgment to add certain aliases of Singh, namely Kaus Singh and Archana Singh. In support of the motion, Lipworth submitted evidence establishing Singh had used these names in a previous lawsuit. Among other documents, Lipworth submitted a response to a request for admissions in which Singh admitted "[t]he individual using the name Raj Singh is the same person as the individual using the name Kaus Singh," as well as a minute order in that previous lawsuit that stated: "Raj Singh has filed a document in which he has conceded that he is Archana Singh, and that he has used the name Archana Singh in this litigation."[5] Lipworth also obtained a temporary protective order restraining Singh and his alias Kaus Singh from conveying, transferring, or encumbering the real property located at 1625 28th Street, Sacramento, (the subject property) until the motion to amend the judgment could be heard. In opposition to the motion to amend, Singh claimed: "Raj Singh is not Kaus Singh who is the owner of 1625 28th Street, Sacramento." Despite a continuance to give Singh the opportunity to produce evidence Kaus Singh was a

---

[5] Singh was subsequently jailed for contempt of court because, among other things, he continued to misrepresent himself as Archana Singh after conceding this was simply his alias, and then claimed Archana Singh was a separate person, but failed to offer any evidence to prove it.

4

separate person, Singh failed to produce any such evidence.  (*Singh v. Lipworth, supra,* C053762.)

The trial court granted the motion to amend the judgment to add Singh's aliases. Thereafter, Lipworth filed an application for sale of the subject property.  (*Singh v. Lipworth, supra,* C053762.)  Ultimately, the trial court denied the application based on a "Stipulation for a Property" entered into in family court proceedings between Singh (using the name "Rag Singh") and his wife Karen (Super. Ct. Sacramento County (2006) No. 03FL00651) and signed, "[s]o ordered" by the family court judge.  The stipulation stated the subject property "shall be Karen's sole separate and personal property" and further stated:  "The parties also stipulate that Karen will transfer the above stated property to Kaus Singh if Kaus Singh, who lives outside California and who is not Raj Singh or Rag Singh, claims his interest in the above stated property."  (*Singh v. Lipworth, supra,* C053762, italics omitted.)  In denying the application, the trial court rejected Lipworth's argument that "since [Singh] had consistently denied owning the property, he was judicially estopped to claim that he owned it under the name Rag Singh and could lawfully transfer it to a third person."  (*Singh v. Lipworth, supra,* C053762.)

In *Singh v. Lipworth, supra,* C053762, we held "the trial court erred by refusing to apply judicial estoppel" and explained:  "[Singh] 'has made an egregious attempt to manipulate the legal system . . . "as egregious as it gets." ' [Citation.]  [Singh] has played an endless game of 'Now you see it -- now you don't' with the courts.  He has filed pleadings and made appearances in various actions under multiple names, to the point of being jailed for contempt of court.  He has manufactured false or deceptive documents aside from the family court stipulation and order at issue here . . . .  And the stipulation itself was a gross fraud on the family court.  [¶]  First, it did not reveal how 'Rag Singh' could properly claim title or transfer title to another.  Second, it declared that 'Kaus Singh' had an unspecified interest in the property which would entitle him to claim it at any time from Karen Singh, yet did not explain how 'Rag Singh' could pass title without

5

regard to that interest.  Third, it declared that 'Kaus Singh' was not Raj Singh, though [Singh] knew that other courts had already found the two were one, and he had admitted the same under penalty of perjury in another action.  Fourth, the record before us suggests that . . . when [Singh] originally submitted the stipulation to the family court, a restraining order in this action . . . barred [Singh] from conveying or transferring the subject property, but the stipulation failed to disclose that fact.  Finally, in light of the above, the stipulation bore all the earmarks of a sham designed to 'transfer' the property (using Karen Singh as a conduit) from [Singh] as 'Rag Singh' to himself as 'Kaus Singh,' while concealing from the family court that his interest in the property was subject to an outstanding judgment.  [¶]  Being well aware of [Singh]'s attempts to trifle with the judicial system, the trial court could and should have used its equitable power to vindicate the system's integrity by applying judicial estoppel." (*Singh v. Lipworth, supra,* C053762.)  We reversed and remanded the matter to the trial court with directions that Karen be joined as a party, if possible, to protect whatever interest in the property she may have.  (*Singh v. Lipworth, supra,* C053762.)

After we issued our decision, Karen transferred the property to "Suman Mehta, Trustee of the RadhaKrishna Living Trust."  Lipworth filed another application for sale of the subject property.  The trial court issued an order to show cause, set a hearing date, and joined Karen and Mehta as indispensible parties.  Claims of exemption were filed by Singh and Karen and a third party claim was purportedly filed by Mehta.  Mehta was ordered to appear with valid identification and a written exemplar of his signature.  Not surprisingly, he did not appear.  Following the hearing, the trial court concluded, "Mehta is yet another alias adopted by [Singh] in his 'identity shell game,' " granted the application for sale, denied the claims of exemption and third party claim, and set aside the transfers of the subject property from Singh to Karen, and from Karen to Mehta, finding them to constitute "a fraud on the court."  The sale order became final after various appeals therefrom were dismissed.  The subject property was sold to Lipworth.

6

## The Current Lawsuit

In December 2009, Singh, his alias Mehta, and his wife Karen sued Lipworth alleging he used "fraudulent representations" to persuade the trial court in the prior lawsuit that Singh was "hiding some properties from his creditors using different names such as Archana Singh and Suman Mehta." The complaint, filed by attorney Nathaniel Potratz, was not served on Lipworth. Plaintiffs filed a notice of pendency of action (lis pendens) with respect to the subject property in April 2010. The lis pendens, which also was not served on Lipworth, was recorded the following month; a proof of service was not recorded.

In October 2010, Lipworth tried to sell the property and obtained a preliminary title report from Placer Title Company that revealed the recorded lis pendens. The following month, Lipworth filed a motion to expunge the lis pendens arguing it was "void and invalid" for lack of service and because proof of service was not "recorded with the notice of pendency of action." (§ 405.23.) Lipworth also argued the complaint did not state a "real property claim." (§§ 405.1, 405.4.)

Plaintiffs, represented by the same attorney, but who apparently changed his name to Nathaniel Sterling in the meantime, argued in opposition: "This case was originated when plaintiffs were unable to prove that **Raj Singh is neither Suman Mehta nor Kaus Singh <u>for a long time</u>**. All the defects stated in this motion are curable. Each case should be decided on merits. Lipworth should never be allowed to sell the house owned by Kaus Singh and Suman Mehta. Raj Singh is neither Kaus Singh nor Suman Mehta. This court should not help Lipworth to sell the property of Kaus Singh and Suman Mehta to satisfy judgment against Raj Singh. Plaintiffs offered many times to [Lipworth's attorney, Stephen C. Finley] to resolve this case outside the court. If attorney Finley listened to their requests, there was no need for any motion in this action. **<u>Accordingly, no relief should be provided until this issue is resolved, otherwise it shall result in</u>**

7

**other lawsuits.  Plaintiffs will take care of all the defects**."[6]  The same day the opposition was filed, plaintiffs filed a first amended complaint and another lis pendens. The amended complaint was not served on Lipworth.

In a supplemental memorandum in support of the motion to expunge, Lipworth argued:  "Apart from the fact that this new [lis pendens] has not been served in the manner required by [section] 405.22 (by registered or certified mail, return receipt requested upon the owner of record), . . . plaintiffs have not, and may not, assert any 'real property claim' to the property which the [lis pendens] seeks to affect.  [¶]  Raj Singh has expressly disclaimed any ownership interest in the property, and is judicially estopped from asserting any interest in the property by Court of Appeal decision in Sacramento Superior Court Action No. 00AS00602 (C053762).  The claims of all plaintiffs to the property have been previously adjudicated by the court in its [sale order].  All appeals from that Order have been stricken or denied."

The trial court granted the motion to expunge the lis pendens and enjoined plaintiffs from recording any further lis pendens against the property.  Plaintiffs filed a motion for rehearing, which was appropriately denied.

In December 2010, plaintiffs filed a second amended complaint without leave of court.  The pleading was stamped "ON DEMAND" and "FILED/ENDORSED" with the date.  Plaintiffs' attorney, Sterling, was suspended from the practice of law in February 2011.

In June 2011, Lipworth's attorney, Finley, received in the mail the original summons in the case, dated December 17, 2009, and a copy of the second amended complaint, with no proof of service attached.  Two days later, Finley sent plaintiffs a letter stating:  "Please find enclosed a copy of 'Notice to Filing Party' in this case, a copy

---

**6**     Throughout this opinion, all quotations from plaintiffs' pleadings use the original emphasis.

of which we received from the court and which is dated December 10, 2010 stating that the Second Amended Complaint was being rejected pursuant to [section] 472 since leave of court must be obtained before the Second Amended Complaint can be filed.  [¶]  *In light of this notice, we would question the 'filed/endorsed' stamp on the Second Amended Complaint which you have forwarded.*  [¶]  From the court's docket, it would appear that the only validly filed Complaint at this time, is the First Amended Complaint which bears a 'Filed/Endorsed' stamp dated November 22, 2010.  Should you be seeking to effect valid service on my client, defendant Stephen Lipworth, you will need to have a Summons issued on the First Amended Complaint, and serve that Summons together with the First Amended Complaint on this office."

In July 2011, Lipworth filed a motion to strike the second amended complaint. Plaintiffs, now in propria persona, filed a fraudulent proof of service stating Lipworth was personally served with the summons and complaint at Finley's office by a person named Danny Simon who lived at 1725 28th Street in Sacramento, which is the address of Sacramento County Human Assistance Department.  Based on this proof of service, plaintiffs obtained a default judgment against Lipworth.  Plaintiffs then filed an opposition to Lipworth's motion to strike the second amended complaint, arguing:  "The first amended complaint is also a pleading.  Thus, the first amended complaint can also be amended without the permission of the court.  All the alleged and valid errors can be cured.  Lipworth defaulted and thus, should not be heard."  Plaintiffs also argued the sale order entered in the prior case is "**ROBBERY AND TERRORISM**" because "**NO ONE SHOULD BE ALLOWED TO TAKE ANY PROPERTY WITHOUT ANY NOTICE TO THE PROPERTY OWNERS**," i.e., Singh's aliases.  Plaintiffs continued: "**Using his position as an officer of the Court, Steven C. Finley proved 'untrue' as 'true' in the courts FOR YEARS.**  Steven C. Finley proved that Raj Singh is Kaus Singh, Archana Singh and Suman Mehta.  **All this resulted in terrorism, an encouragement to terrorism, multiple lawsuits and the loss of public confidence.**"

9

The trial court granted the motion to strike, explaining: "Counsel's improper filing of the second amended complaint 'on demand' merits reporting to the State Bar, in particular as the court clerk had previously rejected the pleading for filing." The trial court also set aside the default judgment on its own motion.

Between September 2011 and April 2012, Singh filed a series of frivolous motions. The first two were titled: "Motion to Allow Second Amended Complaint; Motion to Reinstate the Default; and Request to Ask the State Bar to Investigate the Frauds." The trial court construed the first as a motion for reconsideration and denied it as untimely and for not including an affidavit in compliance with section 1008. The second motion stated: "**This motion is not a motion for reconsideration**." This motion was also denied on procedural grounds. The third motion was similarly titled: "Motion to Allow Second Amended Complaint; Motion to Set Aside Ruling for the Hearing on August 9, 2011; Motion to Re-Instate or to Re-Enter the Default; Request to Issue an OSC; and Request to Ask the State Bar to Investigate the Frauds." It too was denied. And based on declarations filed by Finley stating these motions were not being properly served, the trial court also ordered plaintiffs to use a registered process server. Each motion attempted to relitigate the sale order entered in the prior case, again calling the order "**ROBBERY AND TERRORISM**."

The fourth motion was titled: "Motion to Leave to Amend First Amended Complaint; and **Motion for Reconsideration for a Fair and Unb[ia]sed Ruling**." This motion was also denied on procedural grounds. The fifth motion was titled: "Motion to Leave to Amend First Amended Complaint; and Motion to Relieve Service Requirement." Denying the motion to amend, the trial court explained that "the proposed second amended complaint is 'a collateral attack on a prior final judgment and post[-]judgment orders of this court' " and "is legally untenable." The trial court notified plaintiffs that, "given that [they] previously have filed numerous motions to amend, the court will not consider another motion to amend based on the allegations in the proposed

10

second amended complaint." Declining to relieve plaintiffs of the order to use a registered process server, the trial court explained: "The court found credible the representations of defendant's counsel that he had not been served with many of plaintiffs' filings. If the court's order is a financial burden to plaintiffs, they have no one but themselves to blame." Undeterred, Singh filed a sixth motion, titled, "Motion for Reconsideration; Motion to Set Aside Rulings; and Motion for Sanction." The trial court denied the motion, noted Singh had been declared a vexatious litigant in prior cases, and invited Lipworth to file a motion to require Singh to furnish security or have the case dismissed pursuant to the vexatious litigant statutes. (§ 391 et seq.)

In May 2012, Lipworth filed the invited motion. Based on the fact Singh "repeatedly filed unmeritorious, frivolous motions in this action," the trial court found him to be a vexatious litigant. (See § 391, subd. (b)(4).) The trial court also concluded Singh had no reasonable probability of prevailing in the litigation because the lawsuit amounted to an impermissible collateral attack on a prior final judgment and post-judgment orders. The trial court ordered "Raj Singh aka Suman Mehta" to furnish security in the amount of $15,000 and dismissed the lawsuit as to these plaintiffs when no such security was furnished.

The same day the motion to require Singh to furnish security was filed, Lipworth also filed a demurrer and a special motion to strike pursuant to the anti-SLAPP statute. (§ 425.16.) The trial court granted the anti-SLAPP motion as to the remaining plaintiff, Karen, and awarded attorney fees and costs. The trial court's ruling on the anti-SLAPP motion will be set forth in greater detail in the discussion portion of this opinion.

### *The Current Appeal*

Plaintiffs appeal "from the dismissal and all other intermediate orders." The opening and reply briefs, as well as other documents filed by plaintiffs in this appeal, do not appear to have been written by an attorney, but instead appear to have been written by Singh himself. In Lipworth's motion for sanctions, he argues: "Knowing that Singh was

11

a vexatious litigant and that pre-filing permission would be necessary for the taking of an appeal, [plaintiffs] engaged counsel, Keith R. Oliver, thereby compounding the abuse suffered by [Lipworth] by having to defend an appeal with absolutely no merit whatsoever.  By lending his name to this appeal, [Oliver] has apparently agreed to act as [plaintiffs'] 'puppet', granting to Singh the briefing and service (or rather non-service) of the brief.  By allowing himself to be used in this manner, [Oliver] made himself a party to [plaintiffs'] abuse of the judicial system, and the financial abuse which [Lipworth] has suffered at their hands, and violated his professional responsibility as an attorney."

Similar allegations were made in two unrelated appeals, *County of Sacramento et al. v. Rawat et al.*, C075383 and C075384 (both subsequently dismissed), in which Oliver was also purportedly representing Singh.  In response to these allegations, this court sent a letter to the State Bar referring the matter for investigation.

Oliver responded with a declaration setting forth his conduct in the three appeals.  With respect to this appeal, Oliver stated:  "I did agree to represent [Singh] in the Lipworth appeal.  I found the appeal to be meritorious.  I believed there were issues that were appealable, [germane], and that could be won on appeal."  He also stated:  "Now it has come to my attention through the Court's letter regarding [Singh]'s unauthorized practice of law and my facilitation of this, that documents in the Lipworth appeal may have been filed by [Singh], but indicating they were from me.  [¶]  . . . [I]n the Lipworth appeal, C073177, *other than the notice of appeal and the opening brief*, I have had absolutely no involvement in filings, communications with [Singh] regarding filings, absolutely no knowledge of such filings, and I do not and did not agree to have filed or support or acquiesce to any filings, and I have not signed documents, or seen or heard of any documents being filed on behalf of [plaintiffs].  [¶]  . . . If I had such knowledge, I would not have agreed to have such documents filed unless they were of complete

12

propriety as I do not believe there is any need for aggressive motion filing in the appellate courts. It is my belief that an appeal brief can speak for itself."[7] (Italics added.)

We issued written notice that the court was considering the imposition of monetary sanctions. Oliver did not file an opposition. Singh did. Argument on the matter took place at the same time as oral argument on the merits of the appeal. Oliver began by stating he would "not be making any arguments" and would "defer to Mr. Singh." Reminded he was there on a sanctions motion for filing a frivolous appeal, Oliver stated: "When the appeal was filed, I believed the arguments were meritorious. I filed it in good faith. A lot of time has passed since then, a lot of issues have taken place, and that's about all I can say on it, but it was filed in good faith. I thought the arguments being made on appeal were meritorious and it was a legitimate appeal." Asked to explain which arguments he believed to be meritorious, Oliver answered: "Um, I haven't looked at any of the arguments in such a long time, I can't say." Asked whether or not he filed the opening brief, Oliver said he did, but maintained he could "not recall the arguments" because he had not looked at the brief since it was filed. When told that this explanation was "astounding" and shown a copy of the opening brief, Oliver responded: "I did not

---

**7** Other than the notice of appeal and the opening brief, plaintiffs have filed a reply brief, an opposition to Lipworth's request for judicial notice and sanctions motion, a "Request to Consider New Facts for Attorney Fees and Other Relief," and two documents titled, "*MORE NEW FACTS* FOR APPELLANTS' REQUEST FOR ATTORNEY'S FEES AND OTHER RELIEF" and "*SOME MORE NEW FACTS* FOR APPELLANTS' REQUEST FOR ATTORNEY'S FEES AND OTHER RELIEF." We need not determine whether Oliver or Singh filed these documents, or whether or not Oliver was aware these documents were being filed under his name. The State Bar is far better equipped to make such determinations. We also deny plaintiffs' request for attorney fees. Plaintiffs provide us with no reasoned argument supporting such an award and, aside from citing the private attorney general statute (§ 1021.5), cite no relevant authority. Among the many reasons the request must be denied, plaintiffs' appeal is not "successful" and has not "resulted in the enforcement of an important right affecting the public interest." (§ 1021.5.)

file that brief." Oliver then denied his signature appeared on the brief, but again admitted he filed the notice of appeal. Finally, Oliver conceded the amount of sanctions requested in Lipworth's sanctions motion, i.e., $7,478.75, was a "reasonable number for defending an appeal."**8**

## DISCUSSION

By written motion, Lipworth requests that we impose monetary sanctions on plaintiffs and their attorney, Oliver, for bringing a frivolous appeal. We accept Oliver's admission that he filed the notice of appeal and initial admission that he filed the opening brief, agree with his suggestion the opening brief "can speak for itself," and conclude the appeal is frivolous.

Section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Rule 8.276(a) provides: "On motion of a party or its own motion, a Court of Appeal may impose sanctions . . . on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay . . . ."

"[A]n appeal may be found frivolous and sanctions imposed when (1) the appeal was prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment; or (2) the appeal indisputably has no merit, i.e., when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 310, citing *Flaherty*, *supra*, 31 Cal.3d at p. 650.) "In determining whether an appeal indisputably has no merit,

---

**8** Singh was also asked to address the court at the sanctions hearing. He also denied writing the briefs, but acknowledged portions were "borrowed" from the motions he filed in the trial court. He denied forging Oliver's signature and claimed not to know who wrote the briefs. Singh then argued the appeal was not frivolous because he was not Suman Mehta, Archana Singh, nor Kaus Singh. He was then sworn and testified under penalty of perjury that he was not Suman Mehta, Archana Singh, nor Kaus Singh.

14

California cases have applied both subjective and objective standards. The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective. [Citation.] Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit. [Citation.]" (*Kleveland*, *supra*, 215 Cal.App.4th at pp. 556-557.)

"The objective and subjective standards 'are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay.' [Citation.] An unsuccessful appeal, however, ' "should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law." ' [Citation.]" (*Kleveland*, *supra*, 215 Cal.App.4th at p. 557.)

We begin by noting the issue of whether "Mehta is yet another alias adopted by [Singh]" was finally decided against Singh in the prior lawsuit. Singh may not relitigate this issue. Nor may Singh relitigate the final determination that he used the alias Archana Singh. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [doctrine of collateral estoppel "precludes relitigation of issues argued and decided in prior proceedings"].) And yet, this is precisely what the operative first amended complaint sought to do. Therein, Singh/Mehta and Karen allege: "Lipworth became assignee to collect a judgment from Raj Singh. Relying on [Lipworth's] fraudulent representations, [the trial] court ruled that Raj Singh is hiding some properties from his creditors using different names such as Archana Singh and Suman Mehta. . . . The fact[s] are the following: first, Raj Singh is neither Archana Singh nor Suman Mehta; second, Raj Singh did not own any property using such different names . . . ."

15

The allegations of the first amended complaint are a transparent attempt to relitigate the final judgment and post-judgment orders entered in the prior case based on intrinsic, rather than extrinsic fraud. Witkin explains: "The most common ground for equitable relief [from a final judgment] is extrinsic fraud, a broad concept that covers a number of situations. Its essential characteristic is that it has the effect of preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting that party's claim or defense." (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 225, p. 832.) However, where "the aggrieved party had a reasonable opportunity to appear and litigate that party's claim or defense, fraud occurring in the course of the proceeding is not a ground for equitable relief. The theory is that these matters will ordinarily be exposed during the trial by diligence of the party and his or her counsel, and that the occasional unfortunate results of undiscovered perjury or other intrinsic fraud must be endured in the interest of stability of final judgments." (*Id*., § 241, p. 857.) And while the first amended complaint vaguely asserts that "Suman Mehta and Archana Singh lost their properties without any opportunity to defend," where a party seeks "equitable relief based upon extrinsic fraud in obtaining a judgment, the facts constituting the fraud must be pleaded with particularity and specificity." (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 831.)

Turning to the dismissal entered against Singh/Mehta, the lawsuit was dismissed pursuant to the vexatious litigant statutes. As mentioned, Singh was found to be a vexatious litigant under section 391, subdivision (b)(3), because, "while acting in propria persona, [he] repeatedly file[d] unmeritorious motions" that were "frivolous or solely intended to cause unnecessary delay." Section 391.1 provides: "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security or for an order dismissing the litigation pursuant to subdivision (b) of Section

16

391.3. The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he or she will prevail in the litigation against the moving defendant."

"The trial court exercises its discretion in determining whether a person is a vexatious litigant. Review of the order is accordingly limited and the Court of Appeal will uphold the ruling if it is supported by substantial evidence." (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 636.) "Likewise, a court's decision that a vexatious litigant does not have a reasonable chance of success in the action is based on an evaluative judgment in which the court weighs the evidence. If there is any substantial evidence to support the court's determination, it will be upheld. [Citation.]" (*Ibid.*)

There is no question Singh was acting in propria persona between September 2011 and April 2012 when he filed six motions seeking to file the second amended complaint his former attorney previously filed without the trial court's permission. Three of the motions also sought to reinstate a fraudulently obtained default judgment. Substantial evidence supports the trial court's conclusion these motions were "repeatedly file[d]," "unmeritorious," and "frivolous." (§ 391, subd. (b)(3).) Each motion was procedurally deficient for the reasons explained by the trial court. Moreover, leave to amend may be denied where permitting an amendment would be futile (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1468), e.g., where the amendment does not state a cause of action. (See *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230; *Heckendorn v. City of San Marino* (1986) 42 Cal.3d 481, 489 [leave to amend should be denied where no liability exists under substantive law].) The second amended complaint, like its predecessor, sought to relitigate the final judgment and post-judgment orders entered in the prior case based on intrinsic, rather than extrinsic fraud, and was therefore legally untenable. Nor was there any legal basis to have the fraudulently obtained default judgment reinstated. Substantial evidence also supports the trial court's determination

17

Singh possessed no reasonable probability he would prevail in the litigation. Accordingly, the trial court did not abuse its discretion when it ordered Singh/Mehta to furnish security and dismissed the lawsuit as to these plaintiffs upon the failure to furnish such security. (§§ 391.3, subd. (a), 391.4.) We conclude any reasonable attorney would agree the appeal of this order is "totally and completely without merit." (*Bach v. County of Butte*, *supra*, 215 Cal.App.3d at p. 310.)

We now turn to the dismissal entered against Karen after the trial court granted Lipworth's anti-SLAPP motion. Section 425.16 provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "[I]n applying the statute a court generally is required to engage in a two-step process: 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712, quoting *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) We review the trial court's ruling de novo. (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1447.)

With respect to the first stage of the anti-SLAPP analysis, the trial court found "the [first amended complaint] arises from [Lipworth's] litigation conduct, specifically, 'fraudulent representations' made to obtain judgments and orders from the Court and thus falls directly within the scope of [section] 425.16(e)(2) which covers oral and written statements made in connection with an issue under consideration by a judicial body." Moreover, "[a]ll communications made in the judicial proceeding are absolutely

18

privileged pursuant to Civil Code [section] 47(b)." With respect to the second stage of the analysis, the trial court concluded Karen did not " 'demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment,' " explaining: "Karen Singh failed to file any opposition to the anti-SLAPP motion and thus is unable to meet her burden to demonstrate that the [first amended complaint] is both legally sufficient and supported by a sufficient showing of facts. To the extent the opposition filed previously by Plaintiff Raj Singh to the anti-SLAPP motion directed to him, could be construed as an opposition on behalf of Karen Singh (and it cannot), it is insufficient. Indeed, the [first amended complaint] essentially contains allegations that the Court's previous judgment and orders were based on incorrect findings made as a result of [Lipworth's] misrepresentations. In sum, the [first amended complaint] is nothing more tha[n] an impermissible collateral attack on the Court's previous judgment and orders. [Citation.] Nothing contained in Raj Singh's opposition dictates any other result as it does nothing more than simply reiterate the allegations in the [first amended complaint]. As a result, Plaintiff Karen Singh has failed to meet her burden on this motion and [Lipworth's] special motion to strike is therefore granted."

The trial court's reasoning is unassailable. As with the dismissal under the vexatious litigant statutes, we conclude any reasonable attorney would agree the appeal of the trial court's anti-SLAPP ruling is "totally and completely without merit." (*Bach v. County of Butte*, *supra*, 215 Cal.App.3d at p. 310.)

Lipworth's sanctions motion requests $7,478.75 in attorney fees and costs incurred in defending this appeal and filing the sanctions motion. This request is supported by a declaration by counsel and an itemized billing statement showing fees and costs incurred. We find these sums to be reasonable. Indeed, Oliver conceded at the sanctions hearing this figure was a "reasonable number for defending an appeal."

19

Courts, with increasing frequency, have imposed additional sanctions, payable to the clerk of the court, to compensate the state for the cost to the taxpayers of processing a frivolous appeal. (See *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 36.) The cost of processing an appeal that results in an opinion has been estimated to be approximately $8,500. (See *Kleveland*, *supra*, 215 Cal.App.4th at p. 560.) However, where the legal issues involved in the appeal "are not at all complex," courts have found $6,000 to be an appropriate sanction. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 190; *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520; see also *DeRose v. Heurlin* (2002) 100 Cal.App.4th 158, 182 [$6,000 is "a conservative measure" of the cost of processing the average civil appeal based on a 1992 cost analysis].) Here too, the legal issues are not complex. But this only adds to the frivolousness of the appeal. In determining a sanctions amount, we must also consider "the degree of objective frivolousness" and "the need for discouragement of like conduct in the future." (*Pierotti v. Torian*, *supra*, 81 Cal.App.4th at p. 34.) The degree of objective frivolousness is very high and the need for discouragement of like conduct in the future is great. For these reasons, we impose the amount of $7,500 in sanctions payable directly to the clerk of this court.

We also deem it appropriate to hold plaintiffs' attorney, Keith R. Oliver, jointly and severally liable for the payment of sanctions. (*In re Marriage of Schnabel* (1994) 30 Cal.App.4th 747, 755-756 ["sanctions may be assessed solely against a lawyer who, because the appeal was so totally lacking in merit, had a professional obligation not to pursue it"]; Bus. & Prof. Code, § 6068, subd. (c).)

## DISPOSITION

The judgment is affirmed. Appellants and their attorney, Keith R. Oliver, are ordered to pay $7,478.75 to respondent Stephen Lipworth and $7,500 to the clerk of this court as sanctions for bringing this frivolous appeal. This obligation is joint and several. All sanctions shall be paid no later than 30 days after the date the remittitur is issued.

20

Stephen Lipworth is also awarded costs on appeal. A copy of this opinion and a copy of the oral argument transcript shall be forwarded to the State Bar of California upon issuance of the remittitur.

        HOCH    , J.

We concur:

     BLEASE   , Acting P. J.

      HULL    , J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RAJ SINGH et al., | C073177 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 34200900066746CUFRGDS) |
| STEPHEN LIPWORTH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge.  Affirmed.

OLIVERLawCorp and Keith R. Oliver; Raj Singh for Plaintiffs and Appellants.

Hennefer, Finley & Wood, LLP and Steven C. Finley for Defendant and Respondent.

The opinion in the above entitled matter, filed on June 18, 2014, was not certified for publication in the Official Reports.  For good cause it now appears the opinion should be published in the Official Reports and it is so ordered.

FOR THE COURT:

    BLEASE    , Acting P.J.

    HULL    , J

    HOCH    , J.

1